## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **TARIQ K. SHABAZZ,** | : | |
| | : | |
| *Plaintiff,* | : | **CASE NO.  1:26-cv-01032-BMB** |
| | : | |
| **v.** | : | **Judge Brennan** |
| | : | |
| **FRANK LaROSE,** | : | |
| | : | |
| *Defendant.* | : | |

## DEFENDANT FRANK LaROSE'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant Frank LaRose, Ohio Secretary of State, ("Secretary LaRose"), respectfully moves this Court to dismiss Plaintiff Tariq K. Shabazz's ("Shabazz") complaint for failure to state a claim upon which relief can be granted.  A memorandum in support is attached.

> Respectfully submitted,
>
> DAVE YOST
> Ohio Attorney General
>
> */s/ Stephen P. Tabatowski*
> STEPHEN P. TABATOWSKI (0099175)*
>  *\*Counsel of Record*
> MARK D. TUCKER (0036855)
> Constitutional Offices Section
> 30 E. Broad Street, 16th Floor
> Columbus, Ohio 43215
> Tel: 614-466-2872 I Fax: 614-728-7592
> Stephen.Tabatowski@OhioAGO.gov
> Mark.Tucker@OhioAGO.gov
>
> *Counsel for Defendant Frank LaRose, Ohio Secretary of State*

**MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

For the second time in three years, Plaintiff Tariq K. Shabazz has filed a 42 U.S.C. § 1983 action in this Court challenging Ohio's ballot access statutes establishing signature requirements for independent candidates, Ohio Rev. Code § 3513.257, as violative of the First and Fourteenth Amendments to the United States Constitution.  The Court rejected Shabazz's 2024 First and Fourteenth Amendment challenge to the very same statute. *Shabazz v. LaRose*, No. 1:24-cv-604, 2024 U.S. Dist. LEXIS 132895 (N.D.Ohio July 29, 2024) ("*Shabazz I*").  It should do so again.

## II.     BACKGROUND

In 2024, Shabazz sued Secretary LaRose. Compl., ECF No. 1 at Page ID 6, ¶ 24.  He alleged that he intended to run as an independent candidate for one of Ohio's two seats in the United States Senate, and claimed that Ohio Rev. Code § 3513.257, which requires independent candidates for statewide office in Ohio to file a nominating petition "signed by no less than five thousand qualified electors," was unconstitutional  *Id.* at Page ID 6, ¶ 25.  The Court, noting that "courts have overwhelming[ly] found heightened qualification standards for independent candidates are constitutional," *Shabazz I*, at *8, and that "Sixth Circuit precedent controls the Court's decision in this case," *id.* at *10, rejected Shabazz's constitutional and other challenges.[1] *Shabazz I*, at *15. The Court dismissed his complaint pursuant to Fed.R.Civ.P. 12(b)(6). *Id.*

Shabazz filed the instant action on May 4, 2026, asserting essentially the same First and Fourteenth Amendment claim that he asserted in *Shabazz I*.  Compl., ECF No. 1 at Page ID 7-8, ¶ 30-32.  This time, however, Shabazz indicates that he desires to run as an independent for the

---

[1] Shabazz also asserted claims under the federal Americans with Disabilities Act and the Voting Rights Act. *Shabazz I*, at *2.

office of Cuyahoga County Executive. *Id.* at Page ID 3, ¶ 3.[2] Under Ohio Rev. Code § 3513.257, an independent candidate "to be voted on by electors in any district, political subdivision, or part thereof in which five thousand or more electors voted for the office of governor at the most recent election for that office," must file a "nominating petition [that] contain[s] a number of signatures equal to at least one per cent of those electors." Ohio Rev. Code § 3513.257(C); *see also* Compl., ECF No. 1 at Page ID 1 (Introduction). Shabazz alleges that § 3513.257(C) requires him to obtain 4,164 signatures of Cuyahoga County electors on his nominating petition to run as an independent candidate for Cuyahoga County Executive. Compl., ECF No. 1 at Page ID 4, ¶ 10.

Shabazz asserts that the outcome of this case is not controlled by the Court's decision in *Shabazz I* because the statute, as applied to the Office of Cuyahoga County Executive, differs from his prior challenge to the statute as applied to his intended candidacy for the office of United States Senator. He alleges:

- The independent-to-major party signature ratio here is 83-to-1, compared to 5-to-1 in the prior case, Compl., ECF No. 1 at Page ID 6, ¶ 27a;[3]

- "The prior case did not present the argument that Ohio applies fundamentally incomparable standards—a population-derived threshold versus a flat administrative formality—to independent and major party candidates for the same office," *id.* at Page ID 6, ¶ 27b;

- "The prior case involved a statewide federal office. The present case involves one of only two county executive offices in Ohio, where the generic formula produces a threshold more than twice as burdensome as it produces for the only analogous race

[2] Cuyahoga County is one of two Ohio counties that have adopted a charter as an alternative form of county government to replace the county's statutory form of government with a governing structure that includes an elected county executive and an elected county council. *Greene v. Cuyahoga County*, 195 Ohio App.3d 768, 772, 2011-Ohio-5493, ¶ 4 (8th Dist.). *See also* Compl., ECF No. 1 at Page ID 3, ¶ 6-8.

[3] Shabazz noted that a statewide independent candidate is required to obtain "a flat statutory 5,000 signatures" while "[t]he major party candidate threshold was 1,000—a 5-to-1 ratio." Compl., ECF No. 1 at Page ID 6, ¶ 25.

2

in the state—a race serving a county population of approximately 538,400 [Summit County] compared to Cuyahoga's approximately 1,245,873," *id.* at PageID 6-7, ¶ 27c;

- "The Democratic primary for Cuyahoga County Executive produced no contest. The state's core justification did not occur," *id.* at Page ID 7, ¶ 27d;

- "Plaintiff now presents specific, concrete facts—weeks of personal canvassing effort across Cuyahoga County and a specific imminent exclusion deadline—rather than the abstract allegations present in the prior complaint," *id.* at Page ID 7, ¶ 27e;

- "Excluding Plaintiff produces a completely uncontested general election for the chief executive of a county of approximately 1,245,873 residents—a result that directly undermines the voter choice interests Anderson-Burdick is designed to protect," *id.* at Page ID 7, ¶ 27f.

However, none of these "differences" serve to distinguish this case from the Court's rejection of Shabazz's prior challenge to Ohio Rev. Code § 3513.257 in any material way. Accordingly, this Court should dismiss Shabazz's complaint in this case.

## III. LAW AND ARGUMENT

### A. Standard of review

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.*, citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharmaceuticals, Inc.*, 737 F.3d 378, 387 (6th Cir. 2013), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a

3

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " (citations omitted.) *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

(Citations omitted.) *Ashcroft*, 556 U.S. at 678.  *See also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

> **B**      **Under the Eleventh Amendment, this Court Lacks Jurisdiction Over Claims against Secretary LaRose in his Official Capacity.**

As noted above, Shabazz has sued Secretary LaRose "in his official capacity" as "Ohio Secretary of State."  Compl., ECF No. 1 at Page ID 3, ¶ 4; *id.* at Page ID 1 (caption). Under the Eleventh Amendment, however, the Court lacks jurisdiction over claims against state officials in their official capacity.  Accordingly, the Court should dismiss Shabazz's complaint.

Eleventh Amendment immunity "strikes the proper balance between the supremacy of federal law and the separate sovereignty of the States." *Alden v. Maine,* 527 U.S. 706, 757 (1999). "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'" *McCormick v. Miami Univ.,* 693 F.3d 654, 661 (6th Cir. 2012), quoting *Thiokol Corp. v. Department of Treasury,* 987 F.2d 376, 381 (6th Cir. 1993).[4] See also *Puerto Rico Aqueduct and*

---

[4]"The Supreme Court has long held that the Eleventh Amendment prevents a federal court from entertaining a suit brought by a citizen against his own state."  *Wolfel v. Morris,* 972 F.2d 712, 718 (6th Cir. 1992) (citing *Hans v. Louisiana,* 134 U.S. 1 (1890)).

4

*Sewer Auth. V. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) ("[S]uits against the States and their agencies . . . are barred regardless of the relief sought.") (citation omitted). Moreover, the Supreme Court has "emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.  Suits against state officials in their official capacity therefore should be treated as suits against the State." (Internal quotation marks and citations omitted.) *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Moreover, the deadline for submitting a nominating petition has already passed, R.C. 3513.257, so Shabazz's request to unwind the decision not to place him on the ballot is a request for retroactive relief. *See* C*omm. to Impose Term Limits on the Ohio Sup. Ct. v. Ohio Ballot Bd*., 275 F.Supp.3d 849, 862 (S.D. Ohio 2017) (holding a request "to declare as null and void a prior action by the Ohio Ballot Board" sought "retroactive relief"). Accordingly, the exception to Eleventh Amendment immunity contained in *Ex parte Young*, 209 U.S. 123 (1908), does not apply. Therefore, the Eleventh Amendment deprives this Court of jurisdiction and the Court should dismiss Shabazz's complaint.

### C.      Shabazz Fails to State a Claim Under 42 U.S.C. § 1983.

Even if the Eleventh Amendment did not bar Shabazz's claims, they fail nonetheless. Just as in 2024, Shabazz has failed to plausibly allege a valid constitutional claim upon which relief can be granted.

As the Court recognized in *Shabazz I*, a candidate for political office can secure a place on the general election by securing a nomination in a partisan primary or by filing a nominating petition to run as an independent. *Shabazz I* at *1.[5] As applied to the Office of Cuyahoga County Executive, Ohio law requires candidates in a partisan primary to obtain the valid signatures of fifty

---

[5] A candidate may also file a declaration of intent to be a write-in candidate.  *Shabazz I* at *1. Shabazz has not alleged in his complaint in this action that he intends to become a write-in candidate for Cuyahoga County Executive.

Cuyahoga County electors of that party. Ohio Rev. Code § 3513.05 ("[I]f the declaration of candidacy is of one that is to be submitted only to electors within a district, political subdivision, or portion thereof, the petition shall be signed by not less than fifty qualified electors who are members of the same political party as the political party of which the candidate is a member."). In contrast, an independent candidate for that office must obtain on the candidate's nominating petition the signatures of at least one percent of the number of Cuyahoga County electors voting "for the office of governor at the most recent election for that office . . . ." Ohio Rev. Code § 3513.257(C) ("If the candidacy is to be voted on by electors in any district, political subdivision, or part thereof in which five thousand or more electors voted for the office of governor at the most recent election for that office, the nominating petition shall contain a number of signatures equal to at least one per cent of those electors."). As noted above, because more than 400,000 electors in Cuyahoga County cast ballots for Governor of Ohio in the 2022—the most recent election for that office—the statute requires an independent candidate for Cuyahoga County Executive to obtain more than 4,000 signatures on the candidate's nominating petition.

Shabazz asserts that the "disparity" between the number of signatures that must be obtained by a partisan candidate and an independent candidate—which Shabazz claims is a ratio of "83-to-1," Compl., ECF No. 1 at Page ID 6, ¶ 27a, "constitutes a severe burden on [his] First and Fourteenth Amendment rights and the associational rights of Cuyahoga County voters who would support his candidacy," *id.* at Page ID 8, ¶ 33. Therefore, he alleges, "Ohio's application of Ohio Revised Code §§ 3513.05 and 3513.257 . . . violates the First and Fourteenth Amendments to the United States Constitution . . . ." *Id.* at Page ID 10, ¶ 35. Shabazz's claim is, as a matter of law, without merit. It should be dismissed.

*Shabazz I* provides the framework for dismissal. There, this Court concluded that "Sixth Circuit precedent controls the Court's" resolution of Shabazz's First and Fourteenth Amendment claim, *Shabazz I* at *10, and that, when analyzed under the *Anderson-Burdick*[6] balancing test, "courts have overwhelming[ly] found heightened qualification standards for candidates are constitutional." *Id.* at *8.

> Utilizing [the *Anderson-Burdick*] framework, courts have found that signature requirements for ballot access relating to independent candidates do not unduly burden constitutional rights and are rationally related to important State interests. *See Jenness v. Fortson*, 403 U.S. 431 (1971) (upholding signature requirement for independent candidates where party candidates only needed to win a primary election); *Miller v. Lorain Cnty. Bd. of Elections*, 141 F.3d 252, 259 (6th Cir. 1998) (dismissing constitutional challenge to R.C. § 3513.257 and R.C § 3513.05 because higher signature requirement for independent candidates is rationally related to legitimate state interests); *Phillips v. Lorain Cnty. Bd. of Elections*, No. 16-cv-1689, 2016 WL 8224361, *3 (N.D. Ohio Sept. 16, 2016) (dismissing constitutional claims relating to increased signature collection requirements for independent candidates in R.C. § 3513.257 versus party candidates in R.C. § 3513.05); *State ex rel. Wilcoxson v. Harsman*, No. 24095, [2010 Ohio 4048], 2010 WL 3366193, at *9 (Ohio Ct. App. Aug. 26, 2010) (dismissing constitutional challenges to higher signature collection requirements for independent candidates under R.C. § 3513.257); *see also Lawrence v. Blackwell*, 430 F.3d 368, 375 (6th Cir. 2005) (dismissing challenge to R.C. § 3513.257's early filing deadline for collection of signatures for independent candidates).

*Id.* at *9-10. The Court concluded that, under the Sixth Circuit's decision in *Miller*, it could not "conclude that 'the route open to an independent candidate through a petition is more burdensome than that open to a party candidate.'" *Id.* at *11-12 (citations omitted). Accordingly, the Court ruled that "Plaintiff's contention that the disparity between party candidates and independent candidates violates the First and Fourteenth Amendment fails." *Id.* at *12.

Shabazz attempts to evade the Court's holding in *Shabazz I* by noting that the independent candidate signature requirement applicable in that case was a flat 5,000 signatures for a statewide

---

[6] *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

7

candidate, while the requirement in this case is 1% of the number of Cuyahoga County electors that voted in the 2022 gubernatorial election. Although the number of signatures required for an independent candidate for the office of Cuyahoga County Executive (according to Shabazz, 4,164) is **less** than for the statewide office at issue in *Shabazz I* (5,000), Shabazz argues that the disparity between the number of signatures required of an independent candidate (4,164) and a partisan primary candidate (50) is far greater. Notwithstanding the "disparity" in signature requirements under § 3513.257(C), the Sixth Circuit, the Northern District, and an Ohio appellate court have upheld the statute's 1% independent signature requirement. In *Miller*, the Sixth Circuit upheld the requirement as it applied to a congressional district. 141 F.3d at 259. And in *Phillips v. Lorain County Bd. of Elections*, No. 1:16 CV 1689, 2016 U.S. Dist. LEXIS 206844 (N.D.Ohio Sep. 16, 2016), and *State ex rel. Wilcoxson v. Harsman*, 2010-Ohio-4048 (2d Dist.), the Northern District and the Ohio Second District Court of Appeals both upheld the requirement as it applied to countywide judicial races.

Indeed, courts have rejected constitutional challenges to independent candidate signature requirements much higher than Ohio's 1%. For example, in *Jenness*, *supra*, the United States Supreme Court upheld a Georgia statute that required independent candidates to file "a nominating petition signed by at least 5% of the number of registered voters at the last general election for the office in question." *Jenness*, 403 U.S. at 432 (footnote omitted). *See also American Party of Tex. v. White*, 415 U.S. 767 (1974) (rejecting First and Fourteenth Amendment challenge to Texas statute that required independent candidates to submit petition containing 3% for a congressional district and 5% for a state representative district of voters in the last gubernatorial election); *Swanson v. Worley*, 490 F.3d 2007 (11th Cir. 2007) (rejecting First and Fourteenth Amendment

8

challenge to Alabama statute that required independent candidates to submit petition containing at least 3% of qualified electors in last gubernatorial election).

Nor does the fact that an independent candidate for county executive in the only other Ohio "charter county" (Summit County) must gather fewer signatures than a candidate for County Executive in Cuyahoga County materially distinguish this case from *Shabazz I.* Cuyahoga County has a population more than 2.3 times the population of Summit County, Compl., ECF No. 1 at Page ID 2, so it is no surprise that the 1% signature requirement bears a similar ratio.

Finally, it is of no consequence that only one Democrat and no Republican ran as a candidate for Cuyahoga County Executive in the May, 2026 primary. As the Court in *Miller* observed, partisan candidates and independent candidates are not similarly situated and comparing them is like "comparing apples to oranges." *Miller*, 141 F.3d at 258, quoting *Anderson v. Mills*, 664 F.2d 600, 607 (6th Cir. 1981) (upholding a Kentucky statute requiring an independent candidate for president to "obtain 5,000 signatures to be placed on the general ballot, while a candidate in a political party needs only 2 signatures to be placed on the primary slate"). The fact that other potential candidates chose not to run in partisan primaries does not change the outcome any more than if dozens of candidates had chosen to run for County Executive in either the Democratic or Republican primary—to appear on the general election ballot, they must first win the primary. That the 2026 general election for Cuyahoga County Executive will have only one name on the ballot is due to Shabazz's failure to meet the modest independent candidate nominating petition signature requirement, not an indication that such requirement is unconstitutionally burdensome. *Miller*, 141 F.3d at 258-59.

To hold otherwise would undermine Ohio's legitimate interests of, *inter alia*, preserving "the integrity of the electoral process" by requiring candidate to establish a "significant modicum

9

of support," encouraging "compromise and political stability," and the "prevention of independent candidacies prompted by short range goals." *Id.,* citing *Anderson v. Celebrezze*, 460 U.S. at 788 n.9.  Shabazz's First and Fourteenth Amendment renewed challenge to Ohio Rev. Code § 3513.257 is, therefore, without merit, and should be dismissed by this Court.

## IV.  CONCLUSION

For the forgoing reasons, this Court should dismiss Shabazz's complaint against Secretary LaRose for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Stephen P. Tabatowski*

STEPHEN P. TABATOWSKI (0099175)*
 **Counsel of Record*
MARK D. TUCKER (0036855)
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 I Fax: 614-728-7592
Stephen.Tabatowski@OhioAGO.gov
Mark.Tucker@OhioAGO.gov

*Counsel for Defendant Frank LaRose, Ohio Secretary of State*

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the court's system.  In addition, a copy of the foregoing was served by First Class U.S. Mail upon the following:

Tariq K. Shabazz
5455 N. Marginal Road
Apt. 509
Cleveland, Ohio  44114

Plaintiff, *Pro Se*

*/s/ Stephen P. Tabatowski*
STEPHEN P. TABATOWSKI (0099175)
Assistant Attorney General

11