# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| TARIQ K. SHABAZZ, | : | |
| | : | |
| *Plaintiff,* | : | CASE NO.  1:26-cv-01032-BMB |
| | : | |
| v. | : | Judge Brennan |
| | : | |
| FRANK LaROSE, | : | |
| | : | |
| *Defendant.* | : | |

## DEFENDANT FRANK LaROSE'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS

## I.      INTRODUCTION

Make no mistake: just days shy of two years ago, this Court rejected the same challenge to the same signature requirement that Shabazz once again mounts here. *See generally Shabazz v. LaRose*, No. 1:24-cv-604, 2024 U.S. Dist. LEXIS 132895 (N.D.Ohio July 29, 2024) ("*Shabazz I*"). The Court dismissed his complaint then, and it should do the same now.

Shabazz's opposition does nothing to compel a different conclusion. He uses the brief to instead draw distinctions without a constitutional difference. But Shabazz offers no authority suggesting there is any constitutional significance to variations between the office and election he targeted then and those that he has set his sights on this time around. That is because no such significance exists, and this Court's application of Sixth Circuit precedent once again mandates dismissal.

Shabazz never gets to the merits, however, because his opposition similarly fails to explain why his claim falls outside of Eleventh Amendment immunity. Shabazz is the master of his own

(amended) complaint, and he cannot cast his requested relief as prospective while alleging, with all purported urgency, he needs that relief from a meeting that has since come and gone.

For the foregoing reasons, the Court should grant Secretary LaRose's motion to dismiss.

## II. LAW AND ARGUMENT

### A. Shabazz fails to state an *Anderson-Burdick* claim.

#### i. The Sixth Circuit already upheld the challenged signature requirement in *Miller*, and Shabazz does nothing to distinguish that case.

The burden that a signature requirement imposes has been "repeatedly addressed." *Miller v. Lorain Cty. Bd. of Elections*, 141 F.3d 252, 257 (6th Cir. 1998). Indeed, the Sixth Circuit upheld the signature provisions in Ohio Rev. Code § 3513.257 under *Anderson-Burdick* nearly thirty years ago. *Id.* at 258. To avoid this, Shabazz continues to make much ado about the "83-1 disparity" between the number of signatures an independent candidate must get to appear on the general election ballot as compared to the number of signatures required for a major party candidate to run in their party's primary election. *E.g.*, Doc. 15, PageID 79. This argument fails to change the calculus: as it did the first time around, *Miller* controls and dooms Shabazz's complaint.

Recall that Shabazz mounts only an as-applied First Amendment ballot-access challenge under the *Anderson-Burdick* framework—not an equal protection claim. Doc. 6, PageID 6–8. Regardless, his superficial comparison of the two different signature requirements mangles the *Anderson-Burdick* analysis and loses sight of the purpose of the law he challenges: the independent-party signature requirement demonstrates a "preliminary showing of substantial support" for *that candidate* in *that election*. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1982). The number of signatures required for a major-party candidate to run in a major-party primary has little bearing on the burden imposed by the number of signatures required for a different, independent candidate to qualify for a different election.

Tellingly, Shabazz provides no authority suggesting otherwise—even though the comparison he draws between the two requirements is the heart of his case. *See* Doc. 15, PageID 6. He refers the Court to *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), which is of little help here. At the outset, that case could not have "arise[n] under . . . the same *Anderson-Burdick* framework that governs this action" as Shabazz contends, Doc. 15, PageID 86, because it was decided in 1979. Of course, *Anderson-Burdick*'s "flexible analysis" has since become the ballot-access standard. The blanket application of strict scrutiny employed to invalidate a ballot-access statute in *Socialist Workers Party* therefore provides little direction here. *See id.* at 185.

Ultimately, the reason Shabazz cannot provide authority supporting his argument is because the Sixth Circuit has said the opposite: putative primary and general election candidates are as "similarly situated" as "apples to oranges." *Anderson v. Mills*, 664 F.2d 600, 607 (6th Cir. 1981). With that in mind, what Shabazz "really challenges is a scheme which provides for more than one way to obtain a position on the . . . general election ballot." *See id.* Signature collection was not Shabazz's only route to the general election. As in *Miller*, Shabazz could have become a candidate either by "obtaining fifty signatures from party supporters and win[ning] the primary election" or by "gather[ing] signatures of one percent of the voters in his district who voted in the last gubernatorial election." 141 F.3d at 258–59.[1]

In other words, Shabazz could have been the opponent he feels was missing from the 2026 Democratic primary race for Cuyahoga County Executive. Instead, he chose a different path. True, it did not work out for him—but that does not mean such a scheme is invidious. Rather, having

---

[1] Although the *Miller* court did not address it, Ohio additionally provides a third path to the ballot: "fil[ing] a declaration of intent to be a write-in candidate." *Shabazz I*, 2024 U.S. Dist. LEXIS 132895, at *1.

multiple "avenues to the general ballot" is "not only acceptable, but indeed, desirable." *Mills*, 664 F.2d at 607. It provides "greater access to the political process" because "small struggling candidates/parties" can "still appear on the general election ballot" without incurring "the expense of conducting a primary election." *Id.*

It thus "cannot be said that the route open to an independent candidate through a petition is more burdensome than that open to a party candidate." *Miller*, 141 F.3d at 259 (citing *Mills*, 664 F.2d at 607). Indeed, the Sixth Circuit has suggested winning a primary may well be "more burdensome" than signature gathering. *Mills*, 664 F.3d at 607. Shabazz alleges he needed 4,164 signatures to qualify for the general election, but many prospective major-party candidates in Cuyahoga County with that many "or more votes in a primary election will not find their names on the general election ballot." *See id.* Shabazz is thus incorrect about the burden imposed by his signature requirement, and *Miller* and *Mills* are spot on: Ohio's signature requirement is "not so burdensome on potential independent candidates as to render it unconstitutional." *Miller*, 141 F.3d at 258; *see also Mills*, F.2d at 607.

**ii.      This Court has already held that Shabazz's claim fails under *Miller*.**

This Court already applied *Miller* to the theory Shabazz advances here when it dismissed *Shabazz I*. Shabazz's "83-1 disparity" theory does nothing to change this Court or *Miller*'s logic, so the Court should reach the same result here.

It is a basic principle that "things which are different in fact" need not "be treated in law as though they were the same" to pass constitutional muster. *Tigner v. Texas*, 310 U.S. 141, 147 (1940). Yet Shabazz again takes umbrage with distinctions between two routes to the ballot that "cannot be neatly compared." *Shabazz I*, 2024 U.S. Dist. LEXIS 132895, at *11. In Ohio, all party candidates "must obtain the requisite signatures" and "win the primary election" to compete in the general. *Id.* (citation omitted). In lieu of a primary, independent candidates must gather the required

signatures. *See id*. Each path demonstrates a sufficient quantum of support for a candidate such that ballot confusion and frivolous candidacies are avoided. *See Anderson*, 460 U.S. at 788 n.9. This remains true notwithstanding Shabazz's newfound signature-disparity or uncontested-primary theories. Although Shabazz points here to a particular primary that was uncontested, if Ronayne lacked the support of the Democratic party the primary would, presumably, have been contested.[2]  Regardless, Chris Ronayne still had to qualify for and win it, as do all party candidates. Doc. 6, PageID 4; *see also* Ohio Rev. Code § 3513.05. The rationale behind *Miller* thus remains of equal force as in *Shabazz I*.

The Court was correct in *Shabazz I*: Ohio's differing requirements for the different paths to the general election ballot do not unduly burden independent candidates, and they serve Ohio's interests in "avoiding overcrowded ballots, avoiding voter confusion," and ensuring adequate "support for the persons candidacy,"—interests that have been "already determined legitimate by the Sixth Circuit." 2024 U.S. Dist. LEXIS 132895, at *12. The same holds true here. The Court should reject Shabazz's invitation to use a single uncontested primary as a predicate to undermine those interests. It should instead reach the same conclusion it arrived at two years ago, and dismiss Shabazz's complaint for failure to state a claim.

---

[2] This is an especially commonsense observation under Ohio elections law, which provides that primaries are for the "purpose of *nominating* persons as candidates of political parties for election to offices to be voted for at the succeeding general election."  Ohio Rev. Code § 3513.01(A) (emphasis added); *cf. Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 454 (2008) (holding burden on political parties' rights in blanket-primary system that chooses a "nominee" is greater than blanket-primary that merely "winnows the list of candidates to a final list of two").

**B. Shabazz's complaint asks for retrospective relief, so Eleventh Amendment immunity bars his claims.**

While *Shabazz I* and *Miller* make clear Shabazz loses on the merits, he never gets that far. His opposition also fails to explain why his claim falls outside of Eleventh Amendment immunity.

Recall that Shabazz's requested relief centers around a vote by the Cuyahoga County Board of Elections. Indeed, Shabazz alleges that "[a]bsent emergency relief from this Court," the Board was set to meet on June 16, 2026 to remove him from the ballot. Doc. 6, PageID 36. "Once that vote occurs and the ballot is finalized," he alleged, his "exclusion becomes irreversible" and "no subsequent remedy can restore his opportunity to appear on the November 3, 2026 ballot." *Id.* The meeting, according to Shabazz, represented "a fixed and imminent deadline" that "defines" his alleged irreparable injury. *Id.*

Given Shabazz's own allegations, what complete relief can this Court afford other than by unwinding the Cuyahoga County Board of Elections' past actions? In his own words, his complaint describes the need for "an order undoing a past act" which he concedes falls outside the *Ex parte Young* umbrella. *Compare id. with* Doc. 15, PageID 79. That is why *Committee to Impose Term Limits v. Ohio Ballot Board* is on point: Shabazz wants to "declare as null and void" the Board's vote on a ballot he would now call "finalized." *See* 275 F.Supp. 3d 849, 862 (6th Cir. 2017); *see also* Doc. 6, PageID 36. A claim "seeking retroactive relief for an allegedly constitutionally infirm meeting that took place" in the past is a claim for retroactive relief that the Eleventh Amendment bars. *Comm. to Impose Term Limits*, 275 F.Supp. 3d at 862.

Nor would such a holding "nullify *Ex parte Young*." *See* Doc. 15, PageID 80. Plaintiff alleges he knew the Board would vote to keep him from the ballot as early as May 11, 2026. Doc. 6, PageID 4. Accordingly, he had a window of over a month to seek prospective relief from that vote. Elections litigation frequently occurs in tight (and tighter) timeframes than the month Shabazz had. *See, e.g.*, *Stora v. New York City Bd. of Elections*, No. 2026 U.S. Dist. LEXIS, at

*10 (noting "elections are time sensitive matters often requiring expedited litigation"); Ohio Sup. Ct. Prac. R. 12.08 (expediting election cases filed within 90 days of an election automatically).

As the plaintiff, Shabazz "is the master of [his] complaint." *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (internal quotation marks omitted). Here, Shabazz filed a complaint that, by his own words, asks for retrospective relief that the Eleventh Amendment precludes. He alleged that, after the Board's meeting, the bell would be rung. And he cannot now claim that relief from a completed vote to "irreversibl[y]" "finalize[]" the ballot is somehow forward-looking. *See* Doc. 6, PageID 36.

## III.    CONCLUSION

For the foregoing reasons and those set forth in the Secretary's motion to dismiss, this Court should dismiss Shabazz's complaint against Secretary LaRose for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Stephen T. Tabatowski*
STEPHEN P. TABATOWSKI (0099175)*
 **Counsel of Record*
MARK D. TUCKER (0036855)
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 I Fax: 614-728-7592
Stephen.Tabatowski@OhioAGO.gov
Mark.Tucker@OhioAGO.gov

*Counsel for Defendant Frank LaRose, Ohio Secretary of State*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system. In addition, a copy of the foregoing was served by First Class U.S. Mail upon the following:

Tariq K. Shabazz
5455 N. Marginal Road
Apt. 509
Cleveland, Ohio 44114

Plaintiff, *Pro Se*

/s/ *Stephen P. Tabatowski*
STEPHEN P. TABATOWSKI (0099175)
Assistant Attorney General