IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

TARIQ K. SHABAZZ,

    Plaintiff,

v.                                        Case No. 1:26-cv-01032-BMB

FRANK LaROSE, in his official capacity,

et al.,

    Defendants.

## PLAINTIFF'S SUR-REPLY

## I.  THE ALTERNATIVE THE SECRETARY IDENTIFIES IS A FELONY WHEN PURSUED BY AN INDEPENDENT.

The reply's central new argument is that Plaintiff had another route to the ballot: he "could have been the opponent he feels was missing from the 2026 Democratic primary." Under Ohio law, Plaintiff could not have taken that route without committing a felony.

A candidate seeking a party nomination must file the declaration of candidacy prescribed by Ohio Rev. Code § 3513.07. That form requires the candidate to state, "under penalty of election falsification," that "I am a member of the _____ Party." Plaintiff is an independent and a member of no political party. For him, that declaration could be signed only by stating a falsehood.

Ohio Rev. Code § 3599.36 addresses that falsehood by name. It forbids knowingly stating "a falsehood as to a material matter relating to an election . . . including a statement required for verifying or filing any declaration of candidacy . . . presented to or filed with the secretary of state, a board of elections, or any other public office for the purpose of becoming a candidate for any elective office." Whoever violates the section "is guilty of election falsification, a felony of the fifth degree." The statute further requires that every such document bear, "in bold face capital letters," the warning: "Whoever commits election falsification is guilty of a felony of the fifth degree."

The route the Secretary says was open to Plaintiff thus begins with a form that carries a printed felony warning and is filed with the Secretary of State. Plaintiff has not manufactured this obstacle. The Secretary has enforced it.

The Secretary's own briefing relies on Ronan v. LaRose, No. 26-3272 (6th Cir. 2026). Ronan filed the same declaration of candidacy at issue here, attesting to his membership in a party and to his intent to abide by its principles. A voter protested that he was not in fact a member; the Franklin County Board of Elections divided evenly; and Secretary LaRose personally broke the tie and

disqualified him. The Sixth Circuit declined to disturb the removal, and the Supreme Court denied emergency relief. Critically, the court of appeals found no severe burden on reasoning that forecloses the Secretary's argument here: the requirement "does not prevent Ronan from voting, supporting candidates, endorsing candidates, running for office, or even switching parties," because "[t]he only requirement is that he switch parties truthfully."

Ronan thus establishes two propositions the Secretary cannot reconcile. First, Ohio's party-membership declaration is enforced, and enforced by this Defendant. Second, the constitutional adequacy of that requirement rests entirely on the premise that a false declaration is forbidden; the burden was light in Ronan only because it demanded truthfulness. The Secretary now proposes that Plaintiff should have done the very thing for which Ronan was removed and the removal upheld. An argument cannot be sustained by the case that condemns it.

A regulatory scheme does not become less burdensome because it offers a candidate the option of committing a felony. The Secretary's "alternative" is no alternative at all, and it cannot lighten the burden Anderson-Burdick requires this Court to weigh.

Nor can the Secretary answer that Plaintiff should simply have joined a party. The dilemma only deepens. If Plaintiff signs the declaration without genuine membership, he commits a fifth-degree felony. If he signs it sincerely, he must abandon the independent political identity that is itself the object of constitutional protection, for the associational right at stake includes the right not to associate. Compelled party affiliation as the price of ballot access is not an alternative to the burden; it is a second burden.

The point is sharper still because Ohio recognizes only three political parties: the Democratic, Republican, and Libertarian Parties. A candidate who belongs to none of them has no party primary

to enter. Nor is forming a new party a realistic fourth path; it is a barrier far greater than the one challenged here. Under Ohio Rev. Code § 3517.01(A)(1), a group becomes a political party only by polling at least three per cent of the entire statewide vote for governor or presidential electors, or by filing a party formation petition signed by qualified electors "equal in number to at least one per cent of the total vote for governor or nominees for presidential electors at the most recent election for such office," including "not fewer than five hundred qualified electors from each of at least a minimum of one-half of the congressional districts in this state," filed more than one hundred twenty-five days before the general election. § 3517.01(A)(1)(a), (b)(i)-(iii). To reach the ballot for a single county office, the Secretary's "alternative" would therefore require Plaintiff to organize a statewide political party, satisfy a statewide percentage threshold, and gather five hundred signatures in each of at least eight congressional districts—a burden orders of magnitude greater than the 4,164 signatures he challenges. The Secretary's catalogue of "avenues," applied to an independent, resolves as follows: the major-party primary requires a sworn declaration of membership in a party to which he does not belong, on penalty of felony; the minor-party primary requires the same; new-party formation requires a statewide petition drive dwarfing the requirement at issue; the write-in provision is not ballot access; and what remains is the 4,164-signature requirement whose constitutionality is the subject of this action.

As to the write-in suggestion in the reply's footnote 1, the Supreme Court has held that a candidate "relegated to the write-in provision would be forced to rest his chances solely upon those voters who would remember his name and take the affirmative step of writing it on the ballot." Lubin v. Panish, 415 U.S. 709, 719 n.5 (1974). In Anderson v. Celebrezze the Court noted that 27 write-in votes were cast in the entire State of Ohio in the 1980 presidential election. 460 U.S. 780, 799 n.26 (1983). Write-in status is not ballot access.

## II. WILLIAMS v. RHODES FORECLOSES THE "MULTIPLE AVENUES" DEFENSE OF OHIO'S SCHEME.

The reply argues that a scheme offering "multiple avenues to the general ballot" is "not only acceptable, but indeed, desirable." The Supreme Court has already rejected that defense of Ohio's election code. In Williams v. Rhodes, 393 U.S. 23 (1968), the Court held Ohio's ballot-access provisions unconstitutional because, taken together, they "make it virtually impossible for any party to qualify on the ballot except the Republican and Democratic Parties," which "face substantially smaller burdens." Id. at 25. The scheme gave "the two old, established parties a decided advantage over any new parties struggling for existence," id. at 31, and Ohio law "make[s] no provision for ballot position for independent candidates as distinguished from political parties." Id. at 25.

Williams establishes two propositions the reply ignores. First, the inquiry is cumulative: a ballot-access scheme is measured by the combined operation of its provisions, not by the theoretical availability of alternatives considered one at a time. Accord Libertarian Party of Ohio v. Blackwell, 462 F.3d 579 (6th Cir. 2006). Second, a route reserved to the established parties is not a defense to the burden imposed on those outside them. In Williams it was the constitutional defect.

Anderson confirms the point and does so in terms the Secretary cannot avoid. The Court there rejected Ohio's asserted interest in "political stability," explaining that it "amounts to a desire to protect existing political parties from competition—competition for campaign workers, voter support, and other campaign resources—generated by independent candidates." 460 U.S. at 801-02. The Court continued: "In Williams v. Rhodes we squarely held that protecting the Republican and Democratic Parties from external competition cannot justify the virtual exclusion of other political aspirants from the political arena." Id. at 802. And quoting Williams, the Court observed

that "the Ohio system does not merely favor a 'two-party system'; it favors two particular parties—the Republicans and the Democrats—and in effect tends to give them a complete monopoly." Id. (quoting Williams, 393 U.S. at 32). The reply's praise of a scheme that channels candidates through party primaries is that same interest in different words.

That is this case. The major-party route requires fifty signatures and a sworn declaration of party membership. The independent route requires 4,164 signatures gathered in ink, one witness at a time, and filed the day before the primary. The Secretary defends the disparity by pointing to a route Ohio closes to independents. Williams holds that this is no answer.

## III. THE SECRETARY'S EQUAL-PROTECTION OBJECTION IS FORECLOSED BY ANDERSON ITSELF.

The reply asserts that Plaintiff "mounts only an as-applied First Amendment ballot-access challenge under the Anderson-Burdick framework—not an equal protection claim," and that Socialist Workers Party is therefore "of little help." The Supreme Court disposed of that objection in the very case that gives the framework its name.

Anderson footnote 7 states: "In this case, we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment. These cases, applying the 'fundamental rights' strand of equal protection analysis, have identified the First and Fourteenth Amendment rights implicated by restrictions on the eligibility of voters and candidates." 460 U.S. at 786 n.7. The first case the Court cites is Williams v. Rhodes.

Plaintiff has done precisely what the Supreme Court did: pleaded the First and Fourteenth Amendments, and relied on the ballot-access decisions that identify the rights those Amendments protect. Anderson describes Williams as "our first review of Ohio's electoral scheme" and quotes it for "the interwoven strands of 'liberty' affected by ballot access restrictions." Id. at 787. Williams and Socialist Workers Party are not outside the Anderson-Burdick framework. They are its foundation.

The reply's alternative objection—that Socialist Workers Party was "decided in 1979" and so "provides little direction"—is untenable on its own terms. That decision has never been overruled, limited, or questioned. And the vintage rule the Secretary proposes would sweep away the authority on which he principally relies: Jenness v. Fortson, 403 U.S. 431 (1971), is eight years older; American Party of Texas v. White, 415 U.S. 767 (1974), five years older; Anderson v. Mills, 664 F.2d 600 (6th Cir. 1981), which the reply calls "spot on," predates Burdick by eleven years; and Tigner v. Texas, 310 U.S. 141 (1940), on which the reply also relies, is thirty-nine years older still. A rule that 1979 decisions are too old to guide this analysis, while 1940, 1971, and 1981 decisions control, is not a rule of law.

Socialist Workers Party's holding answers the question presented: "[I]f [the State's] interest is adequately served by a 25,000-signature requirement in a statewide election, the same interest cannot justify a larger requirement in a smaller election." 440 U.S. 173, 186 (1979). And "historical accident, without more, cannot constitute a compelling state interest." Id. In Shabazz I the statewide independent threshold was 5,000. For a single county office it is 4,164. The Secretary does not explain why an interest satisfied by 5,000 signatures statewide requires nearly as many in one county, or why a generic formula never calibrated to this office is anything other than the historical accident Socialist Workers Party forbids.

## IV. MILLER, MILLS, AND TIGNER DO NOT ANSWER THE QUESTION PRESENTED.

Miller. Miller v. Lorain County Board of Elections, 141 F.3d 252 (6th Cir. 1998), upheld the 1% requirement as applied to a congressional district, comparing an independent to partisan candidates who contested a primary. Its reasoning rests on the premise that the primary independently validates a party candidate's support. That premise failed here. Miller did not consider an 83-to-1 disparity, a county executive office existing in two of Ohio's eighty-eight counties, or a general election in which the major-party nominee faced no opponent.

Mills. The reply's reliance on Anderson v. Mills for the proposition that winning a primary "may well be more burdensome" than signature gathering conflates two different things. The constitutional interest at stake is access to the ballot, not the probability of prevailing on it. Every major-party candidate who files fifty valid signatures appears on a ballot and is presented to the electorate. A candidate who then loses a primary is rejected by voters. Plaintiff appeared on no ballot and was rejected by no voter; he was excluded by a filing threshold before any voter could consider him. The Secretary's comparison measures the difficulty of winning; Anderson-Burdick measures the burden of being heard.

Tigner. Tigner v. Texas, 310 U.S. 141 (1940), held that an antitrust exemption for agricultural producers did not offend equal protection. It is not a ballot-access case and it announces no principle that displaces Anderson-Burdick. The framework does not ask whether two things "differ in fact"; it asks whether the burden a regulation imposes is justified by the precise interests the State advances. Anderson, 460 U.S. at 789.

## V. THE STATE INTERESTS THE REPLY INVOKES ARE NOT IMPLICATED HERE.

The reply invokes Ohio's interests in "avoiding overcrowded ballots, avoiding voter confusion," and ensuring adequate support. None is served by excluding Plaintiff.

The ballot is not overcrowded. Plaintiff is the only independent candidate for this office, and the November 3, 2026 general election ballot for Cuyahoga County Executive presently bears a single name. Adding one candidate to a ballot of one does not crowd it. Nor is voter confusion a serious concern; the Sixth Circuit has observed that Ohio voters are not "flummoxed" by ballots offering more than one choice. Blackwell, 462 F.3d 579.

As to support, the reply relies on Anderson's reference to a "preliminary showing of substantial support." 460 U.S. at 788 n.9; see also American Party of Texas v. White, 415 U.S. 767, 782 (1974) ("significant modicum of support"). Plaintiff made that showing. The Board validated 1,030 signatures of registered Cuyahoga County electors—more than twenty times the fifty the State accepted as sufficient to establish the major-party nominee's support for the same office. A threshold that excludes a candidate who has demonstrated twentyfold the support the State deems sufficient for his opponent is not serving the interest the Secretary invokes.

Notably, the Secretary has never defended the adequacy of fifty signatures for this electorate. Ohio Rev. Code § 3513.05 fixes a flat fifty-signature floor for any office submitted to the electors of a "district, political subdivision, or portion thereof," without regard to the size of that constituency. The same fifty electors suffice in Cuyahoga County, with a population of approximately 1,245,873, as in a subdivision of a few thousand. That number is not derived from turnout, from population, or from any measure of the community the candidate seeks to serve.

The omission is not accidental, because the Secretary is caught between two positions and neither assists him. If fifty signatures adequately demonstrate the "preliminary showing of substantial support" on which the reply relies—sufficient to place a candidate's name before more than one million Cuyahoga County electors—then the State has itself identified the constitutionally sufficient showing for this office and this electorate, and Plaintiff exceeded it more than twentyfold. If fifty signatures do not demonstrate that support, and the primary alone supplies it, then the Secretary must say what the 2026 primary validated: the nominee ran unopposed, and no elector was ever asked to choose. The Secretary cannot maintain that fifty signatures are enough when a major-party candidate submits them and insufficient when the comparison is drawn.

## VI.   PARAGRAPH 9 PLEADED IRREPARABLE HARM, NOT A JURISDICTIONAL CONCESSION, AND THE BALLOT IS NOT PRINTED.

The reply's Eleventh Amendment argument rests entirely on the allegation in Paragraph 9 of the amended complaint that, absent relief, Plaintiff's exclusion would become "irreversible." That allegation was pleaded to establish irreparable harm—the second preliminary-injunction factor, which requires a showing that the injury cannot be remedied by damages. It was not a characterization of this Court's remedial authority. A plaintiff does not forfeit federal jurisdiction by pleading urgency, and the Secretary cites no case so holding.

The reply's premise is also factually wrong. The ballot has not been "finalized" in any operative sense. Ballots for the November 3, 2026 general election have not been certified, printed, or transmitted. Federal law requires that absentee ballots be transmitted to uniformed-services and overseas voters not later than forty-five days before a federal election, 52 U.S.C. § 20302(a)(8), and

Ohio requires that such ballots be sent "[n]ot later than the forty-sixth day before the day of each general or primary election," Ohio Rev. Code § 3511.04(B). The Ohio Secretary of State's 2026 Elections Calendar accordingly identifies September 18, 2026 as the operative date. Relief entered before that date unwinds nothing; it directs Defendants, going forward, to include Plaintiff's name on a ballot that does not yet exist.

Committee to Impose Term Limits remains inapposite. The plaintiff there asked the court to "declare as null and void a prior action" of the Ohio Ballot Board. 275 F. Supp. 3d 849, 862 (S.D. Ohio 2017). Plaintiff seeks no declaration concerning the Board's June 16 vote. He seeks an order governing Defendants' future conduct as to a future election. The reply cites that decision as "(6th Cir. 2017)"; it is a decision of the Southern District of Ohio, as the Secretary's own opening brief correctly stated, and it binds no one.

The reply's invocation of Holmes Group proves Plaintiff's point rather than the Secretary's. Plaintiff is indeed the master of his complaint, and his prayer for relief asks this Court to enjoin Defendants "from removing Plaintiff from the November 3, 2026 general election ballot" and to direct that his name be placed and retained on it. Am. Compl., Prayer ¶ 1. That is a request addressed to a future ballot.

Finally, the reply faults Plaintiff for not suing sooner, observing he had "over a month." Plaintiff filed this action on May 4, 2026—seven days before the Board's May 11 determination and six weeks before the June 16 meeting. The diligence the Secretary says was missing is on the docket.

## VII.  THE UNCONTESTED PRIMARY IS A FACT, NOT A PRESUMPTION.

The reply suggests that "if Ronayne lacked the support of the Democratic party the primary would, presumably, have been contested." Anderson-Burdick weighs the State's interests as they actually operate, not as they might have operated. What actually happened is that no primary contest occurred and the major-party nominee reached the general-election ballot on fifty signatures and no opposition. A justification that depends on a process that did not happen cannot justify a burden that did.

## VIII.  CONCLUSION

The reply offers an alternative path that is a felony for an independent, a "multiple avenues" theory the Supreme Court rejected in a case about Ohio, an equal-protection objection foreclosed by Anderson's own footnote, a vintage objection that would discard the Secretary's own authorities, state interests that are not implicated on a ballot bearing one name, and an Eleventh Amendment argument premised on a ballot that has not been printed. The motion to dismiss should be denied and the preliminary injunction granted.

Respectfully submitted,

Tariq K. Shabazz

Pro Se Plaintiff

5455 N. Marginal Road, Apartment 509

Cleveland, Ohio 44114

Dated: _JULY 24_, 2026